**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.

JOSE JESUS PUCHE-GARCIA; RUBEN
DARIO BARRIOS-OLIVARES,                               No. 99-1612
Claimants-Appellants,

v.

$294,950.00, U.S. Currency,
Defendant.

Appeal from the United States District Court
for the Eastern District of North Carolina, at Raleigh.
Terrence W. Boyle, Chief District Judge.
(CA-98-4605-BO-3)

Argued: June 7, 2000

Decided: September 13, 2000

Before MURNAGHAN,* LUTTIG, and MICHAEL, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.
_____

*Judge Murnaghan heard oral argument in this case but died prior to
the time the decision was filed. The decision is filed by a quorum of the
panel. 28 U.S.C. § 46(d).

**COUNSEL**

**ARGUED:** Benjamin Samuel Waxman, ROBBINS, TUNKEY, ROSS, AMSEL, RABEN & WAXMAN, P.A., Miami, Florida, for Appellants. Stephen Aubrey West, Assistant United States Attorney, Raleigh, North Carolina, for Appellee. **ON BRIEF:** Robert G. Amsel, ROBBINS, TUNKEY, ROSS, AMSEL, RABEN & WAXMAN, P.A., Miami, Florida, for Appellants. Janice McKenzie Cole, United States Attorney, Anne M. Hayes, Assistant United States Attorney, Margaret Phillips Eagles, Third-Year Law Student, Raleigh, North Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

The United States filed a complaint for forfeiture against $294,950 in cash found in a car driven by Jose Jesus Puche-Garcia, alleging that this money was the proceeds of drug trafficking. The district court ultimately awarded summary judgment to the government, and the claimants appeal. We affirm.

I.

On August 26, 1997, Deputy Mark Hart and Deputy T.J. Bailer from the Cumberland County, North Carolina, Sheriff's Department were conducting traffic law enforcement operations as a two-man team (in separate cruisers) on Interstate 95. While traveling southbound, Bailer noticed a southbound Chevrolet Lumina in front of him traveling in the lefthand lane at a speed of five to ten miles per hour below the speed limit of 70. As Bailer began following the Lumina, he called in its plate number to the dispatcher, who reported that the car belonged to Avis in New York. Deputy Hart was positioned in the

2

median a few miles down the road, doing radar detection. Upon seeing Deputy Hart's cruiser, the driver of the Lumina slammed on the brakes, abruptly decelerating to about 45 miles per hour. This forced Deputy Bailer and several drivers behind him to brake sharply in order to avoid a series of rear-end collisions. Concluding that the Lumina driver's sudden braking and deceleration had created a traffic hazard, Deputy Bailer stopped the Lumina.

As Bailer left his cruiser and walked toward the Lumina, the driver, soon identified as Jose Jesus Puche-Garcia, stepped out of the car, held his hands in the air, and said, "I am a tourist." Bailer immediately explained that he had stopped Puche-Garcia because he had created a hazard, but Puche-Garcia offered no explanation for his driving behavior. After issuing Puche-Garcia a warning citation for careless driving and impeding the flow of traffic, Bailer asked him if he had any large amounts of U.S. currency, narcotics, or firearms in the car. Puche-Garcia answered in the negative and thereafter consented to a search of the car and the two suitcases in the trunk. The passenger, Humbert Gerardo Hernandez-Fuenmayor, unlocked one of the suitcases with a key. In the suitcases were large amounts of U.S. currency in small denominations wrapped in stacks with rubber bands. Bailer noticed that Puche-Garcia had a stunned looked on his face and was sweating heavily while Deputy Hart searched the suitcases. A short time later, a police drug dog gave a "positive alert" for controlled substances on both of the suitcases.

After waiving his Miranda rights, Puche-Garcia first said that he did not know whose money he had, but that he was"just to take it back to Venezuela" with him. He then said that he was driving in a rental car from New Jersey to Miami where he was to buy merchandise in connection with his business. He said he was in the business of buying large appliances and reselling them. When Puche-Garcia was asked where in Venezuela his business was located, he only answered, "in Venezuela." He also said that he had received a telephone call at his hotel near the airport in Newark, New Jersey, and the caller gave him instructions about where to pick up the packages (containing the money). Puche-Garcia told the deputies that he did not know or could not remember the name of the person who called. After some hesitation, Puche-Garcia said that he believed he would get a telephone call in Florida advising him where to deliver the

3

money, but he said he did not know exactly where or how he was to be contacted. Finally, Puche-Garcia said he did not know where the money came from, but it was for his business. He insisted that he was not a drug dealer.

Although Puche-Garcia claimed that he was in the business of buying and selling appliances, he had no documents or papers indicating he was in that business. After the deputies seized the money, Puche-Garcia was told he was free to resume his trip. He responded that he could not leave without the money "because someone would hurt him."

When the deputies removed the cash from the suitcases, they found forty-two bundles in one suitcase and twenty-six bundles in the other. The cash was in small denominations of twenty, ten, five, and one; it was wrapped with rubber bands and had been hidden behind and in the clothing packed in the suitcases. The deputies observed that the money was not new or fresh, and based on their training and experience, they concluded that the appearance and packaging of the currency was consistent with use in drug trafficking. A subsequent search of the Narcotics and Dangerous Drugs Information System indicated that a telephone number found in the car, handwritten on a folio from the Newark hotel in which Puche-Garcia had stayed, was associated with a drug money laundering investigation in New York.

Because the North Carolina deputies believed the money was the proceeds of illegal drug trafficking, they transferred the case to the Drug Enforcement Administration (DEA). In due course, the United States filed a complaint for forfeiture against the $294,950.00 in currency seized from Puche-Garcia's rental car. The forfeiture action was brought under 21 U.S.C. § 881(a)(6), which provides that money furnished in exchange for a controlled substance and all proceeds traceable to such an exchange shall be subject to forfeiture to the United States. No property right exists in such money. See 21 U.S.C. § 881(a)(6). The District Court for the Eastern District of North Carolina issued a warrant for arrest of the property and directed that notice be given to potential claimants. Thereafter, Puche-Garcia, Ruben Dario Barrios-Olivares, and Sunfruits, C.A. (together, the "Claimants") filed a verified claim and an answer to the complaint. The Claimants filed a motion for summary judgment without supporting

4

affidavits. They also filed a motion to suppress, asserting that the traffic stop was orchestrated. The government filed a cross-motion for summary judgment that was supported by several affidavits from the law enforcement officers involved in the seizure of the money. A hearing on these motions was set for February 11, 1999, but Claimants did not appear. Claimants failed to appear because their local counsel did not notify Claimants' Florida counsel about the hearing. (Local counsel assumed that Florida counsel had also received a copy of the notice from the clerk.) The district court invoked Fed. R. Civ. P. 41(b) and denied Claimants' summary judgment and suppression motions for failure to prosecute. In the alternative, the district court denied Claimants' motions on the merits and entered summary judgment for the government. The district court also denied Claimants' subsequent motion to reconsider. Claimants appeal.

II.

Claimants first argue that the district court erred in denying their motion to suppress without holding an evidentiary hearing. They claim that there were material facts in dispute because of their allegation that the stop of Puche-Garcia's vehicle was orchestrated by the police. Because the Claimants proffered no evidence to rebut the deputies' sworn explanations of the stop, an evidentiary hearing was not necessary.

The police may stop a vehicle if they have probable cause to believe that the driver is committing a traffic violation. See Whren v. United States, 517 U.S. 806, 819 (1996). Of course, the police cannot orchestrate a traffic stop, see United States v. Castro, 129 F.3d 752, 756 (5th Cir. 1997), but there is no evidence of orchestration here. On the day Puche-Garcia's car was stopped, Deputies Bailer and Hart were conducting routine traffic patrol on I-95 in North Carolina. North Carolina law prohibits a person from driving "at such a slow speed as to impede the normal and reasonable movement of traffic except when reduced speed is necessary for safe operation or in compliance with law." N.C. Gen. Stat. § 20-141(h). North Carolina law also provides that a person who drives "without due caution and circumspection and at a speed or in a manner so as to endanger or be likely to endanger any person or property shall be guilty of reckless driving." N.C. Gen. Stat. § 20-140(b). In this case, Deputy Bailer saw

5

Puche-Garcia violate both of these traffic laws: Puche-Garcia was driving too slowly in the passing lane, thereby impeding the flow of traffic; in addition, upon seeing Deputy Hart, he braked sharply and his sudden reduction in speed created a risk of collision. Deputy Bailer therefore had probable cause to stop Puche-Garcia's car. Because the Claimants have not proffered any evidence to show that the traffic stop was orchestrated, the district court did not err in denying Claimants' motion to suppress without holding an evidentiary hearing.

III.

Claimants also argue that the district court erred in denying their motion for summary judgment and in granting the government's cross-motion for summary judgment. Our summary judgment analysis in this civil forfeiture proceeding has two components. First, in response to Claimants' motion for summary judgment, which asserted lack of probable cause, the government was required to show (by affidavit or other appropriate evidence) that it had probable cause to seek forfeiture. See 21 U.S.C. § 881(d); 19 U.S.C. § 1615; Fed. R. Civ. P. 56(e). Second, on its own motion for summary judgment, the government had to show that there was no genuine issue of material fact and that it was entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); see also United States v. Leak, 123 F.3d 787, 793 (4th Cir. 1997).

A.

To establish probable cause, the government must show

> that a substantial connection exists between the property forfeited and the criminal activity defined by the statute. The applicable definition of probable cause is the same as that which applies elsewhere: reasonable ground for belief of guilt, supported by less than prima facie proof but more than mere suspicion.

Leak, 123 F.3d at 792 (internal quotation marks and citations omitted). In evaluating probable cause in drug trafficking forfeitures, we

6

should bear in mind that "[c]ircumstantial evidence of drug transactions is sufficient to support the establishment of probable cause in a forfeiture proceeding, without showing a direct connection between the property subject to seizure and the illegal activity that renders the items forfeitable." United States v. Thomas , 913 F.2d 1111, 1117 (4th Cir. 1990) (internal quotation marks and citations omitted). Moreover, courts should not "dissect strands of evidence as discrete and disconnected occurrences . . . but [should] apply the probable cause standard to the facts in the totality." Id. at 1115 (internal quotation marks and citation omitted).

Several of the factors present in this case have been relied on by courts to support a finding of probable cause for forfeiture. The fact that "most of the money consisted of small denominations bundled with rubber bands" helps to establish a "substantial connection" to drug trafficking. United States v. $206,323.56, More or Less, in United States Currency, 998 F. Supp. 693, 699 (S.D. W. Va. 1998). The concealment of money (in socks and elsewhere) lends "to the inference that the money was drug related." United States v. $215,300 United States Currency, 882 F.2d 417, 418-19 (9th Cir. 1989). The carrying of "unusually large amounts of cash" can help to establish the link to drug activity, Thomas, 913 F.2d at 1115; see also $215,300 United States Currency, 882 F.2d at 419; and, an"evasive, confused explanation for carrying" a large sum can contribute to probable cause, United States v. One Lot of U.S. Currency ($36,634), 103 F.3d 1048, 1055 (1st Cir. 1997) (internal quotation marks and citation omitted). Likewise, "carrying cash from an unknown owner to an unknown recipient" is probative in establishing a connection to drug trafficking. See United States v. $321,470.00, United States Currency, 874 F.2d 298, 304 (5th Cir. 1989). Finally, a positive alert by a police dog on a cache of money can have some probative value in establishing probable cause, particularly when it is considered along with other telling circumstances:

> Even though widespread contamination of currency plainly lessens the impact of dog sniff evidence, a trained dog's alert still retains some probative value. Ordinary experience suggests that currency used to purchase narcotics is more likely than other currency to have come into contact with drugs.

7

United States v. Saccoccia, 58 F.3d 754, 777 (1st Cir. 1995).

The totality of the facts in the present case points to the conclusion that the government established probable cause to connect the money in Puche-Garcia's rental car to illegal drug activity. The deputies recovered $294,950 in cash from the car, a very large sum. It consisted of small denominations of twenty-, ten-, five-, and one-dollar bills. It was organized in sixty-eight bundles tied together with rubber bands. The money was found hidden in clothing located in two suitcases in the trunk of a car. When Deputy Hart was searching the suitcases, Puche-Garcia had a stunned look on his face and was sweating heavily. The explanation that Puche-Garcia provided to the deputies was inconsistent and confusing. Puche-Garcia initially said he was not carrying a large sum of money, but when the money was found he said he was taking it to Venezuela. Later, he said he was taking it to Miami where he would use it to buy merchandise in connection with his business. Puche-Garcia could not give the name of the person from whom he had picked up the money in New Jersey, and he could not explain where (or to whom) he was to deliver the money once he arrived in Miami. He said he was afraid of being hurt if he could not deliver the money. Puche-Garcia insisted that he was not in the drug business and that he was in the appliance business. Yet he could not give an address for his business other than "Venezuela." Adding to all of these facts is the positive dog sniff and the telephone number found in the car that was related to a (drug) money laundering investigation. Considering all of these facts in the totality, we conclude that the government has shown the requisite probable cause. Therefore, we affirm the district court's denial of Claimants' motion for summary judgment.

B.

Claimants' argument that the district court erred in granting the government's cross-motion for summary judgment also fails. The government is entitled to summary judgment if it can show (1) that there is no genuine issue of material fact on the question of claimants' lack of a property right in the money and (2) that the government is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c). As we explained in Leak, "the government cannot prevail on summary judgment if the [claimants] offer[ ] a reasonable and legitimate expla-

8

nation . . . and the explanation is verified by facts and circumstances which, if believed, would enable a rational jury to conclude by a preponderance of the evidence that [forfeiture is not warranted]." Leak, 123 F.3d at 793 (internal quotation marks omitted). Fed. R. Civ. P. 56(e) explains the burden of a party opposing a summary judgment motion:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Claimants in this case did not heed the requirements of Rule 56. They did not present any affidavits or other evidence to the district court in order to offer a legitimate explanation as to the source of the money and to explain why forfeiture was not warranted. Claimants were not entitled to sit back and wait for a hearing before presenting any evidence they might have had. See Atkinson v. Bass, 579 F.2d 865 (4th Cir. 1978) (affirming grant of summary judgment to defendants without a hearing where plaintiff failed to proffer any affidavits challenging the motion); see also 10A Wright, Miller & Kane, Federal Practice and Procedure: Civil 3d § 2720.1, at 357 (1998) (the prevailing view is that a court can grant summary judgment without a hearing). The government met its burden under Rule 56(c), making at least a circumstantial case (through the deputies' affidavits) that the money in Puche-Garcia's car was connected to drug trafficking and that the Claimants had no right to retain the money. The Claimants, on the other hand, failed to satisfy their burden of presenting contrary facts.

Claimants argue that they offered evidence that they were innocent owners when they filed an administrative claim with the DEA. The administrative claim, however, was not part of the record in the district court, and the district court was thus not able to consider it. The record on appeal does not include information submitted to an agency unless that information is part of the "original papers and exhibits

9

filed in the district court." Fed. R. App. P. 10(a)(1). Consequently, we cannot consider the summary of this information that is contained in the Claimants' brief.

Because Claimants failed to offer any evidence contradicting the government's evidence that the $294,950 in Puche-Garcia's car was the proceeds of drug trafficking, there is no dispute of material fact as to this issue. Given these facts, the money is subject to forfeiture under 21 U.S.C. § 881(a)(6) as "proceeds traceable to [a controlled substance] exchange," and the government is thus entitled to judgment as a matter of law. Therefore, the district court did not err in awarding summary judgment to the government.

IV.

We affirm (on the merits) the district court's denial of Claimants' motion to suppress and for summary judgment, and we affirm (on the merits) the award of summary judgment to the government. In light of this disposition, it will not be necessary for us to consider Claimants' argument that the district court abused its discretion by entering an involuntary dismissal under Fed. R. Civ. P. 41(b) for failure to prosecute.

AFFIRMED